## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **MILIA LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:23-cv-02005-JTF-atc** |
| | ) | **JURY DEMAND** |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

In this insurance coverage dispute, policyholder Milia LLC argues that Defendant State Farm Fire and Casualty Company's ("State Farm") allegedly wrongful denial of coverage for damage to its premises entitles it to compensatory and punitive damages. (ECF No. 1-2, 9.) On March 31, 2025, State Farm moved for summary judgment. (ECF No. 51-1.) Milia responded on April 28, and State Farm replied on May 12. (ECF Nos. 52 & 53.)

For the reasons set forth below, the Court **GRANTS** State Farm's Motion for Summary Judgment with respect to Milia's claim for punitive damages but **DENIES** it with respect to all other claims. The Court concludes that exclusions 1.j. and 2.k. do not apply as a matter of law. The merits of all other claims and defenses will be decided at trial.

# I.    BACKGROUND[1]

## A. The Evidence

On February 18, 2022, Milia purchased a two-building apartment complex located at 123 and 131 N. Bingham Street, Memphis, Tennessee 38112 (the "Premises").[2] (ECF No. 51-2, 1.) Milia was present for National Property Inspections' pre-purchase inspection of the Premises on December 2, 2021. (*Id.*) The Pre-Purchase Inspection Report recommended that the roof be repaired or replaced. (*Id.*) Regarding the roof, the report stated that (1) it was not possible to inspect for the possibility of active leaks due to a lack of interior access; (2) the roof surface was composed of two different materials of different ages; (3) the sealant on joints in the roof was deteriorated; (4) loose and unsecured roofing material may allow water intrusion; (5) wrinkles in roofing material and low spots allowed standing water; and (6) it was recommended that a qualified roofing contractor evaluate the entire roof surface and make any repairs needed to protect against water intrusion. (*Id.* at 2.) The report contained photographs depicting existing and/or ongoing water pooling on the roof. (*Id.*) Additionally, it noted that the roof did not have a drainage system, and deterioration on the trim in several locations around the buildings was indicative of water intrusion. (*Id.*)

State Farm issued a Businessowners Policy to Milia bearing the policy number 92-NC-X094-5 (the "Policy") for the Premises. (*Id.*) The Policy had an effective date of February 17, 2022, and ran through February 17, 2023. (ECF Nos. 51-2, 2-3 & 52-2, 2.)

On March 23 or 24 of 2022, Milia's insurance agent reported a claim for damage to the roof to State Farm based on information contractor Southern Roofing provided. (ECF Nos. 51-2, 5 & 52-

---

[1] The Court only discusses the facts pertinent to State Farm's Motion. The facts are taken from the parties' filings. Any disputes of fact are noted.
[2] Two different buildings are at issue in this case. However, the briefings do not distinguish between the two in the argumentative sections. The Court follows the parties lead in doing so.

2, 3. & 5.) Southern Roofing reported that Building No. 123 had its roof ripped off and there was significant interior water damage to Units 11 and 12. (*Id.*)

Milia retained Delta Public Adjusters, LLC ("Delta") to inspect the Premises. (*Id.* at 6.) Delta in turn requested that Wallace & Todd Consulting ("W&T") inspect the two buildings. (ECF No. 51-4, 3.) W&T observed that (1) temporary repairs had been made to the west end of the building where Delta's photographs depicted wind damage, and to the apartment below the wind damage on the east side of Building No. 123; (2) wind damage to the roof seams and an uplifted drip edge along the south side of Building No. 131 could be observed from Building No. 123 and the ground underneath; (3) no winds exceeding 40 MPH occurred on the date of loss and the most recent date of elevated wind (recorded as 64 MPH) occurred on January 1, 2022; (4) the pre-purchase inspection of the Premises did not mention the peeled back condition of the roof; and (5) the limited amount of water damage to the cover board below the wind damaged seams in Building No. 131 supported the conclusion that the wind damage was a recent occurrence. (*Id.* at 4-8.)

Delta sent State Farm photographs and an estimate of the damages on April 18, 2022. (ECF No. 51-2, 6.) On May 3, 2022, with Delta and Southern Roofing present on Milia's behalf, State Farm claims adjuster Elizabeth Fatovic inspected the Premises. (*Id.*) Fatovic evaluated Delta's report after her own inspection and requested that it provide an updated estimate. (*Id.*) State Farm received the amended estimate on May 7, 2022. (*Id.*)

Based on Fatovic's inspection and observations, State Farm retained a structural engineer from Applied Building Sciences, Inc. ("ABS") to investigate further. (*Id.*) ABS found, among other things, that (1) the roof was damaged; (2) at least some of that damage, such as the peeling back of the roof covering at the west end, south wing, and east wing of Building No. 123 occurred during "the storm"; (3) there were numerous observable deficiencies on the roof including

3

functional, installation and age-related problems; (4) ponding water at various locations indicated a long-term problem with a lack of drainage; (5) no high wind events were reported in the area on the reported date of loss, and the last such event occurred on January 1, 2022; (6) the failure/peel back of the roof covering occurred at relatively low wind speeds and was attributable to poor installation and to the deteriorated condition of the roof; and (7) Building No. 131 did not incur any storm-related damages.[3] (ECF No. 51-5, 230-32 & 244-46.)

Based on State Farm's investigation of the claim, ABS's findings in its report, and Fatovic's observations, it determined that the Premises' damage was not consistent with damage from a high wind event occurring on the reported date of loss. (ECF No. 51-2, 6.) State Farm's formal determination states its conclusion that the damage to the Premises was the result of workmanship issues and the overall poor condition of the roof, including but not limited to prior water intrusions and neglect. (ECF No. 51-2, 6.) In a letter dated July 6, 2022, State Farm informed Milia it was denying the claim because the damage was not covered based on the exclusions cited therein. (*Id.* at 7.) Milia contends that the findings in ABS's report are inconsistent with State Farm's conclusion. (ECF No. 52-2, 3.)

Milia's expert, Robert M. Thompson, inspected the Premises on February 29, 2024, and his report did not reference any damage caused by hail. (*Id.*) That report also acknowledged that winds did not exceed 40 mph near the Premises, nor were there any "elevated wind events" recorded in Shelby County, Tennessee on the date of loss. (*Id.* at 8.)

**B.  The Relevant Exclusions**

As relevant here, the policy excludes coverage for:

_____

[3] ABS's report refers to Building No. 123 and Building No. 135. (ECF No. 51-5, 230-32.) The relevant building numbers in this case are 123 and 131. The Court assumes that reference to "Building No. 135" is a typographical error.

1.   . . . any loss which would not have occurred in the absence of one or more of the following excluded events[:]

. . .

**j. Fungi, Virus Or Bacteria**

. . .

2. . . .any [] loss whether consisting of, or directly and immediately caused by, one or more of the following:

**k.  Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**l.  Other Types of Loss**

(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

. . .

(4) Settling, cracking, shrinking or expansion;

. . .

But if an excluded cause of loss that is listed in Paragraphs (1) through (7) above results in an accidental direct physical loss by any of the "specified causes of loss" or by building glass breakage, we will pay for the loss caused by that "specified cause of loss" or by building glass breakage.

. . .

**p. Continuous Or Repeated Seepage, Discharge Or Leakage of Water**

Continuous or repeated seepage, discharge or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

(ECF No. 51-5, 13-15.)

The Policy also provides that:

3. [State Farm does] not insure under any coverage for any loss consisting of one or more of the items below. Further, [State Farm does] not insure for loss described in Paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

**a.  Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraphs **1.** and **2.** above to produce the loss.

. . .

**c. Work**

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance; of part or all of any property (including land, structures or improvement of any kind) on or off the described premises.

(*Id.* at 15.)

## C. The Lawsuit

After State Farm denied coverage, Milia brought this lawsuit in state court. (ECF No. 1-2.) Milia alleged that "[o]n or about March 23, 2022, a certain severe weather event which included high velocity wind of up to Sixty (60) MPH [] seriously damaged the [Premises'] roofing system." (*Id.* at 8.) Milia also alleged that the Premises were damaged by "large circumference hail." (*Id.*) It argued that State Farm was liable for breach of contract for refusing to cover the wind damage to the roofing and the water damage to the interior incurred during the hail and high wind events. (ECF No. 1-2, 9.) Milia sought $4,000,000 in compensatory damages, pre- and post-judgment interest, attorney's fees, and punitive damages "as the Court may deem appropriate." (*Id.* at 12.) It argued that punitive damages were appropriate because State Farm didn't conduct a reasonable investigation and wrongly denied the claim, in essence. (*See id.* at 11.)

State Farm removed the case to this Court on January 4, 2023. (ECF No. 1.) This motion for summary judgment is the only substantive motion that has been filed in this case. The case is set for a jury trial on September 8, 2025. (ECF No. 48.)

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

The court must view the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or arguing that the moving party is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The opposing party "cannot rest solely on the allegations made in [his] pleadings." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (alteration in original) (internal quotation marks omitted) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52).

### III.    ANALYSIS

#### A.  Evidentiary Objections

Milia argues that certain materials State Farm relies on to demonstrate the nonexistence of genuine disputes of material fact are inadmissible. Specifically, Milia contends that the National Property Inspections Report and CoreLogic Wind Verification Report constitute inadmissible hearsay and lack authentication. (ECF No. 52-2, 2 & 5.) It also objects to the recitation of the policy provisions under the best evidence rule. (*Id.* at 3.)

Fed. R. Civ. P. 56(c)(2) provides that, in litigating a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Assessing whether summary-judgment evidence could "be presented in a form that would be admissible in evidence" at trial under Rule 56(c)(2) is "substantially more complicated than just deeming statements hearsay." *Siefert v. Liberty Twp.*, No. 23-3692, 2024 WL 4100897, at *6 (6th Cir. Sept. 6, 2024) (Moore, J., concurring) (quoting *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 424 & n.8 (6th Cir. 2021)). "[T]he advisory committee's commentary for Rule 56 as well as Supreme Court and Sixth Circuit precedent support [the] conclusion that courts, in determining whether to consider hearsay evidence, may inquire as to whether the party opposing summary judgment is capable of producing an otherwise inadmissible hearsay statement in a form that will be admissible at trial, *i.e.*, via substituted oral testimony by the third-party declarant." *Wyatt*, 999 F.3d 424 n.8.

#### i.    The National Property Inspections Report

In its Motion for Summary Judgment, State Farm relies on National Property Inspections' Pre-Purchase Inspection Report to show that the major issues with the Premises' roof predated the

Policy's coverage period. (ECF No. 51-2, 1-2.) Milia requests that the report be excluded because it is unauthenticated inadmissible hearsay. (ECF No. 52-2, 2.) State Farm did not respond.

The report likely constitutes hearsay—it contains statements, all of which were made by an out of court declarant, and it is being offered for its truth. Fed. R. Evid. 801(c). That said, the report is admissible as a business record pursuant to Fed. R. Evid. 803(6), which allows for the admission of:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A)  the record was made at or near the time by—or from information transmitted by someone with knowledge;
> (B)  the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C)  making the record was a regular practice of that activity;
> (D)  all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E)  the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The National Property Inspections Report was prepared in the normal course of National Property Inspections' business as a pre-purchase inspection. (ECF No. 51-2, 1.) There is no dispute that the report was prepared shortly after the inspection was performed, and that it was prepared by a professional inspector. The preparation of such a report is undoubtedly a regular practice for those who perform home and building inspections for prospective buyers. Milia does not suggest it will challenge any techniques and/or methodologies relevant to the report's preparation, and the Court finds it noteworthy that Milia apparently found the information in the National Property Inspections Report to be sufficiently trustworthy to base its decision to purchase the Premises on its findings.

Were State Farm to call a witness to testify to all these conditions, the Court would conclude that the National Property Inspections Report is admissible hearsay pursuant to the

business records exception. Since Milia has not argued that there would be any obstacle to State Farm calling such a witness, it has not met its burden under Fed. R. Civ. P. 56(c)(2). With respect to authentication, the same witness would also be able to testify that the report is what it is claimed to be. Fed. R. Evid. 901(b)(1).

### ii.    The CoreLogic Wind Verification Report

Milia next seeks the exclusion of the CoreLogic Wind Verification Report on the ground that it is inadmissible hearsay that has not been authenticated. (ECF No. 52-2, 5.) Per CoreLogic's website: "Wind Verification Reports are powered by a fully-automated, severe wind verification system from CoreLogic. This system combines proprietary, three-dimensional storm models with artificial intelligence, radar data, and real-world observations to analyze what actually happened."[4]

The report is not hearsay. The hearsay rule applies only to out-of-court *statements*. *See* Fed. R. Evid. 801(c)(1). The rule defines a "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). The CoreLogic Report constitutes a report of raw data generated by a machine or algorithm. The consensus among the circuit courts is that machine-generated data cannot be hearsay because it does not constitute a statement under Fed. R. Evid. 801(a). *See Lyngaas v. Curaden Ag*, 992 F.3d 412, 431 (6th Cir. 2021) (collecting cases); *see also* 4 Federal Evidence § 8:13 (4th ed.) ("On a mechanical level, the question whether the hearsay doctrine reaches information provided by machines . . . is easily answered.  Under Rule 801(a), a statement is 'a person's' utterance, so nothing 'said' by a machine . . . is hearsay[.]").

Although the CoreLogic Report is not hearsay, State Farm will still bear the burden of authenticating it. *See Lyngaas*, 992 F.3d at 431. Milia has not shown that it would be impossible

---

[4] CoreLogic, Wind Verification Reports (2015), https://www.wvs.corelogic.com/pdfs/wind-verification-report-datasheet.pdf.

for State Farm to produce proof at trial "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). As such, the Court declines to exclude the CoreLogic Report in assessing State Farm's Motion for Summary Judgment.

### iii.    Insurance Policy Recitation

State Farm included the relevant policy provisions in its statement of undisputed facts. (ECF No. 51-2, 3.) Milia objects to this recitation under the best evidence rule. (ECF No. 52-2, 3.) The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. "The purpose of the best evidence rule is to prevent fraud and encourage accuracy." *Slocum v. Bear*, No. 1:18-CV-423, 2021 WL 3683873, at *4 (S.D. Ohio Mar. 26, 2021), *report and recommendation adopted*, No. 1:18-CV-423, 2021 WL 3683353 (S.D. Ohio Aug. 19, 2021) (citations omitted). It is unclear why Milia takes issue with State Farm's recitation of the relevant Policy section. As Milia acknowledges, State Farm also provided an admissible duplicate of the Policy in Exhibit C. (ECF No. 51-5, 7-47.) The Court declines to exclude State Farm's policy recitation under the best evidence rule.

### B.  Coverage and Exclusions

State Farm argues that it is entitled to judgment as a matter of law on Milia's breach of contract claim because Milia's claimed loss is not covered under the Policy. (ECF No. 51-1, 9.) State Farm contends that it was not required to cover the claimed loss because (1) the exclusions contained in the Policy, including those for "wear and tear," "deterioration," "continuous or repeated seepage, discharge or leakage of water… that occurs over a period of 14 days or more," and "faulty, inadequate, or defective … workmanship" unequivocally preclude coverage for Milia's claimed

loss; and (2) coverage is precluded under the loss in progress doctrine. (*Id.* at 7-8.) The Court handles several interpretive issues before turning to these two substantive disputes.

###### i.    Policy Interpretation

###### a.    Principles of Interpretation

Standard contract interpretation principles apply to insurance policies. *Hudson v. Liberty Mut. Pers. Ins. Co.*, No. 2:23-CV-02060-TLP-CGC, 2024 WL 4101937, at *5 (W.D. Tenn. July 24, 2024) (citations omitted). "Courts must give the insurance policy's terms their common, plain and ordinary meaning." *Id.* (citations omitted). "The plain and ordinary meaning is the meaning which the average policy holder and insurer would attach to the policy language." *Id.* (quoting *Trust Ins. Co. v. Phillips*, 474 S.W.3d 660, 667 (Tenn. Ct. App. 2015) (internal quotation marks omitted). The insurance contract "must be read as a layman" would read it. *S. Trust Ins. Co.*, 474 S.W.3d at 667 (quoting *Paul v. Ins. Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984)). Courts should consider the contract "as a whole, 'for one clause may modify, limit or illuminate another.'" *Id*. at 670 (citation omitted).

When a Tennessee court interprets contract language, it first decides whether the language is ambiguous. *Id.* (citing *Planters Gin Co. v. Fed. Compress Warehouse Co*., 78 S.W.3d 885, 890 (Tenn. 2002)). "If ambiguous language limits coverage, the language must be strictly construed in favor of the insured." *Hudson*, 2024 WL 4101937, at *5 (citation omitted).

###### b.    Definition and Interpretation of Undefined Phrases

Here, the issue of whether the cited Policy exclusions apply is directly dependent upon the meaning of two specific phrases. The Policy excludes coverage for losses "consisting of" or "directly and immediately caused by" certain events. (*See, e.g.,* ECF No. 51-5, 13-14.) Neither

phrase is defined in the Policy, and the briefings do not define them.[5] (*See* ECF No. 51-1, 11.) The only hint is that the two cannot mean the same thing, since numerous paragraphs exclude coverage for losses "consisting of" *or* "directly and immediately caused by" some occurrence. (*See id.*)

 Without a supplied technical definition, the Court turns to the dictionary and its sister courts. Merriam-Webster provides that the phrasal verb "consist of" means "to be formed or made up of (specified things or people)."[6]

As for "direct and immediate cause," another court grappling with a similar State Farm policy thoroughly examined the caselaw and dictionary entries, before concluding that "[w]hen there is a chain of events leading to a loss, as here, a direct and immediate cause has been defined as the one nearest in time to the specific event at issue." *Winders v. State Farm Fire & Cas. Co*., 359 F. Supp. 3d 1274, 1279 (N.D. Ga. 2018) (providing a textual analysis and collecting cases). Keep in mind that a cause nearest in time to an event is not necessarily the same as a proximate cause, which refers to the primary or reasonably foreseeable cause of an injury.

### ii.    Do the Exclusions Apply?

State Farm contends that there does not exist a genuine dispute of material fact and that it is entitled to judgment as a matter of law on Milia's breach of contract claim because the Policy excludes coverage for damage caused by or resulting from wear and tear; rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; settling, cracking, shrinking or expansion; continuous or repeated discharge or leakage of water, or the presence of condensation of humidity, moisture or vapor, that occurs over

---

[5] In its brief, State Farm claims that the Policy "does not provide coverage for damage *caused by or resulting from* wear and tear . . . ." (ECF No. 51-1, 11 (emphasis added).) While this paraphrasing of the Paragraph 2 Exclusion suggests that State Farm believes the phrases mean "caused by or resulting from," nothing in the record supports that interpretation.

[6] Consist of, Merriam-Webster.com (last visited June 16, 2025).

a period of 14 days or more; or faulty, inadequate or defective workmanship, repair, construction, or maintenance. (ECF No. 51-1, 12.)

A review of the disputed and undisputed facts relevant to these exclusions guides this inquiry. First, the roof was in poor condition before Milia purchased the Premises. The National Property Inspections' December 2, 2021 Pre-Purchase Inspection Report provides that: the sealant on the joints was deteriorated, wrinkles in the material permitted pooling of water, unsecured roofing materials would permit water intrusion, and there was evidence of water intrusion on Unit 123. (ECF No. 51-2, 2.) Milia has not shown that this fact is in dispute.

Second, it cannot be genuinely disputed that winds did not exceed 40 MPH and hail did not fall at the Premises on the date of the claimed loss.[7] Milia's claims that the Premises were battered by "large circumference hail" and "high velocity wind of up to Sixty (60) MPH" on that date are without support in the record. (ECF No. 1-2, 8.) Milia's own experts support the Court's conclusion. (*See* ECF Nos. 51-4, 6 & 51-2, 8.)

Yet Milia points out that State Farm's expert, ABS, confirmed its experts' findings that *wind* damaged the roofing system. (ECF No. 52-1, 3.) ABS's report acknowledges the "failure/peel back of the roof covering," but states that it occurred at "relatively low wind speeds and is attributed to poor installation and to the deteriorated condition of the roof." (ECF No. 51-5, 245.) State Farm never responded to Milia's point that its own expert observed that the roof was damaged by wind, albeit "at relatively low wind speeds." (*Id.*) Nevertheless, State Farm's position seems to be that the excludable causes—wear and tear, deterioration, and poor maintenance of the roof—were

---

[7] The CoreLogic Wind Verification Report provides that the "[d]ate of loss field will ignore the normal [recording] threshold of 58 MPH within 3 miles, and will report any wind speed down to 40 MPH." (ECF No. 51-4, 126.) Since the CoreLogic Reports are the only measure of the windspeeds in the record, and the Report provides that "[n]o wind greater than 40 MPH [was] detected" on March 23, 2022, the Court treats the non-occurrence of winds exceeding 40 MPH on the date of claimed loss as fact in assessing this Motion. (*See id.* at 125.)

14

responsible for the claimed loss because otherwise, the relatively slow wind speed would not have been able to cause such severe damage. Even so, the nexus between the roof's condition before the Policy period commenced and the wind damage to the roof is cabined to these one-line conclusions in ABS's expert report. Viewing the evidence in the light most favorable to Milia, there remains a genuine dispute of material fact as to whether there exists a causal connection between the roof's poor condition and the damage it incurred during the storm.

As explained below, it is not clear that the Policy exclusions apply even if it were undisputed that the slow wind able to peel back the roof solely because of the roof's poor condition.

### a. Paragraph 2 Exclusions[8]

Two Paragraph 2 exclusions are at issue. First is Paragraph 2.l. which excludes coverage for losses "consisting of" or "directly and immediately caused by" wear and tear, deterioration, and poor maintenance of the roof, among other things. (ECF No 51-5, 13-14.) Second is Paragraph 2.p. which relates to continuous or repeated seepage that occurs over a period of 14 days.[9] (*Id.* at 15.)

Interpreting Paragraph 2.l. with the definition outlined above, the "consisting of" provision covers scenarios where the claimed loss itself is wear and tear, deterioration, poor maintenance, or any of the other listed causes. Here, the claimed loss "consists of" a peeled back roof and water infiltration. Thus, by definition, the claimed loss itself is not one of the excludable grounds set forth in Paragraph 2.l.

---

[8] The denial letter refers to Paragraph 1.j., an exclusion for losses involving fungi virus or bacteria growth, proliferation, spread or presence. (ECF No. 51-5, 252-53.) However, the Court cannot find any mention of fungi, virus, or bacteria in the parties' filings. The denial letter also references 2.k., an exclusion for losses involving neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss. (*Id.*) Again, the parties' briefings are silent on this exclusion. It is unclear why either exclusion was invoked. The Court finds, as a matter of law, that neither exclusion applies.

[9] The denial letter erroneously places this exclusion under Paragraph 3. (*See* ECF No. 51-5, 253-54.)

State Farm appears to be pursuing the other provision under this exclusion, that the loss was "directly and immediately caused by" wear and tear, deterioration, poor maintenance or one of the other excluded causes. State Farm fares no better under this provision for two reasons.

First, the record demonstrates at minimum a factual dispute as to whether wind caused the claimed loss. And while a jury may find that the proximate cause of the roof's failure/peel back was its poor condition, State Farm must show that the roof's poor condition was "the cause nearest in time" to the roof's peel back. *See Winders*, 359 F. Supp. 3d at 1279. Viewing the evidence in the light most favorable to Milia, the nearest cause in time to the roof's peel back was the wind. Hence, exclusion 2.l. may not apply to the roof failure/peel back under the "directly and immediately caused by" provision.

Second, it seems that the Policy itself requires State Farm to cover the loss under the exact theory it presses in its brief. The Policy provides that if an excluded cause of loss in Paragraphs (1) through (7) under "l. Other Types of Loss" "results in an accidental direct physical loss by any of the 'specified causes of loss' or by building glass breakage, we will pay for the loss caused by that specified cause of loss'. . . ." (ECF No. 51-5, 14.) The Policy provides that "[s]pecified causes of loss" means, among other things, windstorms. (*Id.* at 29.) Neither the Policy nor the parties explain what qualifies as a windstorm. The Tennessee Supreme Court's preferred definition, "the aspect of a storm [ ] that is an outburst of tumultuous force[,]" is not particularly helpful either. *Lunn v. Indiana Lumbermens Mut. Ins. Co*., 184 Tenn. 584, 591 (1947) (internal quotation marks omitted) (quoting 29 American Jurisprudence, page 792, Section 1052). What's important here is that the classification of a weather event as a windstorm does not appear to require that winds exceed 40 MPH—the slowest windspeed that the CoreLogic Report would record—or that winds exceed any speed at all. Thus, the exception to this exclusion seems to obligate State Farm to cover

16

the claimed loss if wear and tear and deterioration resulted in a windstorm being able to peel back the roof, allowing for water infiltration.

As for the loss pertaining to water infiltration, the Court cannot determine whether the water infiltration occurred due to the roof peeling back, or if it occurred due to the unsecured roofing material (which would likely satisfy one of the roof condition-related exclusions). Nothing in the record points to either conclusion. State Farm has therefore not met its burden in showing that the Paragraph 2.l. exclusion bars coverage for the water infiltration.

Turning to 2.p., the exclusion cited as grounds for denying coverage for the water infiltration damage, the Court cannot find anything in the record that establishes that seepage, discharge or leakage of water occurred over a period of 14 days or more. (ECF No. 51-1, 15.) Perhaps State Farm is referring to the pooling of water on the roof. Even so, it is unclear how long that water was pooling, and if that pooling of water relates to the claimed water infiltration damage. The record is insufficient for the Court to determine if this exclusion applies.

To summarize, State Farm's Motion is **DENIED** with respect to its arguments that exclusions 1.j., 2.k., 2.l., and 2.p apply and bar coverage. The Court concludes that exclusions 1.j. and 2.k. do not apply as a matter of law. State Farm's defenses under exclusions 2.l. and 2.p. can be renewed at trial.

### b. Paragraph 3 Exclusions

The relevance of the Paragraph 3 exclusions is unclear. In its July 6, 2022 letter, State Farm relied on 3.c., which excludes coverage for any loss "consisting of" faulty, inadequate, or defective workmanship, repair, materials, and maintenance, among other things. (ECF No. 51-5, 253-54.)

Regarding 3.c., as established previously, the claimed losses themselves were not faulty, inadequate or defective work. The claimed losses "consist of" a peeled back roof and water

infiltration. This means that the claimed losses did not "consist of" anything excluded in 3.c. So, 3.c. cannot be a ground for denying coverage.

Paragraph 3 also contains an exclusion for weather conditions. Neither party discussed this exclusion, but it seems to bear directly on this case's facts. This exclusion, 3.a., precludes coverage for losses "consisting of" weather conditions but only if weather conditions contribute in any way with a cause or event excluded in paragraphs 1 and 2 to produce the loss. (ECF No. 51-1, 15.) The Court cannot make sense of this exclusion. What kind of claimed loss is "formed or made up of" weather conditions?

The more pressing point is that Paragraph 3.a. provides that if "direct physical loss results from items 3.a., 3.b., or 3.c.," then State Farm will "pay for the resulting loss unless the loss itself is one of the losses not insured in SECTION I." (*Id.*) As stated before, the direct and immediate cause of the roof peel back appears to be the wind. Regardless of whether the wind speed was severe or "relatively low," wind speed is a weather event. It would seem the Policy's plain terms provide coverage.

State Farm's Motion is **DENIED** with respect to its argument that Paragraph 3.c. applies and bars coverage. State Farm's defense under this exclusion can be renewed at trial.

### iii.    Does the Loss in Progress Doctrine Preclude Coverage?

Notwithstanding the applicability of the exclusions, State Farm argues that the claimed loss is not covered under the Policy because the loss in progress doctrine applies. (ECF No. 51-1, 10.)

In short, the loss in progress doctrine precludes coverage where "the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 178–79 (6th Cir. 1993). As the Sixth Circuit has

explained, the loss in progress doctrine embodies "the principle that losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient 'risk' being transferred between the insured and the insurer, are not proper subjects of insurance." *Am. & Foreign Ins. Co. v. Sequatchie Concrete Servs., Inc.*, 441 F.3d 341, 345 (6th Cir. 2006) (quoting 7 Couch on Insurance § 102.8). "[T]he doctrine is properly invoked when the insured knows about the claimed loss before the policy is purchased." *Union Univ. v. Evanston Ins. Co*., No. 120CV01254JDBJAY, 2022 WL 507666, at *10 (W.D. Tenn. Feb. 19, 2022) (quoting *State Auto. Mut. Ins. Co. v. R.H.L., Inc*., No. 07-1197, 2010 WL 909073, at *4 (W.D. Tenn. Mar. 12, 2010)).

The two Sixth Circuit cases above illustrate the sort of foreknowledge an insured must have for the rule to apply. *Inland Waters* involved a disposal company employed to remove and dispose of hundreds of drums containing waste paint material. 997 F.2d at 173. The company crushed the drums on the customer's property and discovered that the drums contained liquids were soaking into the soil. *Id.* Six years later, investigations of the property determined that these liquids contaminated the soil and groundwater. *Id.* The relevant insurance policy's coverage period commenced after the company crushed the drums, but before the discovery of the soil and groundwater contamination. *Id.* at 174. At issue was whether the loss in progress doctrine precluded coverage for the disposal company's liability relating to the contamination. *Id.* The Sixth Circuit did not reach a conclusion, but directed the district court to consider on remand whether "the disposal company knew or should have known at the time it obtained insurance coverage . . . that the spill would result in damage to the groundwater or that the spill posed an immediate threat of damage to the groundwater." *Id.* at 179.

In *Sequatchie Concrete Services*, a general contractor was supposed to provide waterproof blocks for a hotel's construction. 441 F.3d at 342. During construction, the hotel complained that

the blocks were not waterproof, and leaks were occurring. *Id.* at 342. The contractor advised that this was normal until the building was completed and sealed. *Id.* at 343. The building continued to leak when sealed, and the hotel informed the contractor that it expected that the costs associated with the problem would be paid for. *Id.* The contractor referred the matter to its corporate counsel who informed the hotel that the contractor was not liable. *Id.* Afterwards, an insurance company issued a policy to the contractor. *Id.* The hotel then sued the contractor. *Id.* The contractor sought coverage for the loss—legal liability for providing the ineffective waterproof blocks. *Id.* The Sixth Circuit concluded that the loss in progress doctrine precluded coverage because the contractor was aware of the threat of loss before the coverage period began. *Id.* at 346.

State Farm contends that the loss in progress doctrine precludes coverage here because the Pre-Purchase Inspection Report issued before the Policy's inception put Milia on notice that roof was in poor condition and that some water infiltration had already occurred. (ECF No. 51-1, 13.) Milia responds that it had no knowledge that a windstorm would lift the roofing system and cause water infiltration on the property. (ECF No. 52-1, 7.)

State Farm urges that the doctrine's applicability does not hinge on whether Milia had knowledge that a windstorm would cause the claimed loss. (ECF No. 53, 5.) State Farm is right in a sense. For the doctrine to preclude coverage here, it must be shown that Milia knew that the roof's condition prior to the coverage period (1) made the roof's failure/peel back imminent or highly probable, and (2) made water infiltration imminent or highly probable. *See Inland Waters*, 997 F.2d at 179. State Farm has not offered any evidence in support of either of these conclusions. The Court concludes that a reasonable jury could determine that although Milia knew that the roof was not in good condition before the coverage period, it did not know that either of the two scenarios described above were imminent or highly probable.

20

State Farm's invocation of the loss in progress doctrine does not entitle it to judgment as a matter of law on this basis. The Motion is **DENIED** with respect to this defense. However, State Farm can renew the defense at trial.

### C. Punitive Damages

Last, State Farm contends that it is entitled to judgment as a matter of law on Milia's claim for punitive damages notwithstanding the Court's decision as to the merits of Milia's breach of contract claim because Milia has not produced any evidence that would suggest that it has acted intentionally, fraudulently, or recklessly in denying coverage.

Tennessee law permits awarding punitive damages in only "the most egregious" breach of contract cases where "there is clear and convincing proof that the defendant has acted either intentionally, fraudulently, maliciously, or recklessly." *LBC Assocs. Chattanooga #1 v. Allied Prop. & Cas. Ins. Co*., No. 220CV02650SHLTMP, 2021 WL 5154245, at *6 (W.D. Tenn. Aug. 23, 2021) (internal quotation marks and citations omitted).

Is this one of the most egregious breach of contract cases?  Milia urges that State Farm's cancellation of the February 17, 2022–February 17, 2023 policy on May 20, 2022, two months after the March 23, 2022 claimed date of loss, amounts to malicious, willful, intentional, or fraudulent conduct. (ECF Nos. 52-1, 9 & 52-4, 2.)  The Court does not agree.

First, Milia's response is devoid of any evidence demonstrating or even suggesting that State Farm acted intentionally, fraudulently, maliciously, or recklessly in denying coverage. A reasonable jury could not find for Milia on its bare, unsupported, and conclusory claim that it is entitled to punitive damages.

Second, Milia's demand for punitive damages appears to arise from allegations that are unrelated to its breach of contract claim. In its Complaint, Milia sought punitive damages based

on State Farm's conduct in denying coverage. (ECF No. 1-2, 10-11.) That denial of coverage undergirds the breach of contract claim. Now, Milia claims to be seeking punitive damages for State Farm's premature cancellation of the Policy. (ECF No. 52-1, 9.) Milia makes no attempt to explain how the policy cancellation is constitutive of the breach of contract claim. There being no allegation that State Farm is liable for canceling the policy, Milia cannot sustain its claim for punitive damages arising out of that cancellation. State Farm's Motion for Summary Judgment on Milia's claim for punitive damages is **GRANTED**.

## IV.    CONCLUSION

Consistent with the foregoing, State Farm's Motion for Summary Judgment is **GRANTED** with respect to Milia's claim for punitive damages but **DENIED** with respect to all other claims. The Court concludes that exclusions 1.j. and 2.k. do not apply as a matter of law. The merits of all other claims and defenses will be decided at trial.

**IT IS SO ORDERED**, this 3rd day of July 2025.

_s/John T. Fowlkes, Jr._
JOHN T. FOWLKES, JR.
United States District Judge